[824 NYS2d 72]

NATIONAL FOOTBALL LEAGUE, Appellant, v VIGILANT INSURANCE COMPANY, Respondent.

First Department, November 14, 2006

## APPEARANCES OF COUNSEL

*Covington & Burling,* Washington, DC (*Mitchell F. Dolin,* of the District of Columbia bar, admitted pro hac vice, and *Jenny C. Ellickson* of counsel), and *Covington & Burling,* New York City (*Michael C. Nicholson* of counsel), for appellant.

*DLA Piper Rudnick Gray Cary US LLP,* New York City (*Joseph G. Finnerty III, Aron Egan Weiss* and *Eliot J. Kirshnitz* of counsel), for respondent.

## OPINION OF THE COURT

GONZALEZ, J.

This appeal requires us to determine whether a former college football player's antitrust lawsuit against the National Football League (NFL) challenging the NFL's draft eligibility rule falls within the employment practices exclusion of an insurance policy issued by defendant Vigilant to the NFL. We find that because the employment practices exclusion is subject to a reasonable interpretation that would render it inapplicable to the subject antitrust claim against the NFL, we reverse the trial court's dismissal of the complaint and find the exclusion inapplicable as a matter of law.

Vigilant issued to the NFL an executive protection insurance policy covering the period between April 30, 2003 and April 30, 2004. The policy provided the NFL with claims-made liability coverage and defined "Loss" to include indemnification for defense costs. The insuring clause required Vigilant to pay for "all Loss for which [the NFL] becomes legally obligated to pay on account of any Claim first made against the [NFL] during the Policy Period . . . for a Wrongful Act." The policy defined "Wrongful Act" as "any error, misstatement, misleading statement, act, omission, neglect or breach of duty committed . . . by [the NFL] before or during the Policy Period."

The policy also included the following exclusion: "[Vigilant] shall not be liable . . . for Loss on account of any Claim made against [the NFL] . . . for any Employment Practices." "Employment Practices" were defined in the policy as:

> "any actual or alleged wrongful dismissal, discharge or termination of employment, breach of any oral or written employment contract or quasi-employment

contract, employment-related misrepresentation, violation of employment discrimination laws (including workplace and sexual harassment), wrongful failure to employ or promote, wrongful discipline, wrongful deprivation of a career opportunity, failure to grant tenure, negligent evaluation, employment-related invasion of privacy, employment-related defamation or employment-related wrongful infliction of emotional distress

"or violation of any other federal, state, local or common law, statute, ordinance, rule or regulation or any public policy relating to employment or employees, including without limitation the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act, the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, the Occupational Safety and Health Act, and any workers' compensation, unemployment insurance, social security, disability benefits or similar law."*

The instant coverage dispute arose after Maurice Clarett, a former college football player for Ohio State University, sought entry into the 2003 NFL draft. The NFL has a rule prohibiting any player who has not completed three college seasons, or is not three years removed from high school graduation, from being eligible for the draft. Pursuant to this rule, the NFL denied Clarett draft eligibility for the 2003 draft because he did not meet either criterion.

In 2003, Clarett commenced an action against the NFL in United States District Court for the Southern District of New York alleging that the NFL's draft eligibility rule violated the Sherman and Clayton acts (15 USC § 1 *et seq.*; § 15 *et seq.*). In addition to the anticompetitive allegations in his complaint, Clarett expressly alleged that he was interested in entering the 2003 NFL draft "but was prevented from doing so by the [NFL] Rule."

On February 5, 2004, the District Court granted summary judgment in favor of Clarett and ordered him eligible to enter

---

* The definition of "Employment Practices" is found in a single paragraph of the subject policy, but is separated into two paragraphs herein, consisting of 12 enumerated employment practices (paragraph 1) and a "catchall" provision (paragraph 2).

the 2004 draft. The NFL appealed to the Second Circuit, which reversed the District Court, holding that the NFL's "eligibility rules are immune from antitrust scrutiny under the non-statutory labor exemption" (*Clarett v National Football League*, 369 F3d 124, 125 n 1 [2d Cir 2004], *cert denied* 544 US 961 [2005]). The court explained that although the NFL rule "deprives Clarett of the opportunity to pursue, at least for the time being, the kind of high-paying, high-profile career he desires" (*id.* at 141), any challenge to the NFL's and players union's criteria "must be founded on labor rather than antitrust law" (*id.* [internal quotation marks omitted]).

Previously, in October 2003, the NFL had provided notice of Clarett's federal court complaint to Vigilant and requested reimbursement of defense costs, which ultimately exceeded $850,000. In a letter dated December 22, 2003, Vigilant denied the NFL coverage for costs associated with the Clarett litigation, citing the employment practices exclusion in the policy.

The NFL commenced the instant action in October 2004 for a declaratory judgment and breach of contract. In its complaint, the NFL sought a declaration that Vigilant is contractually obligated under the policy to pay for all defense costs incurred by the NFL in the Clarett litigation, and compensatory damages for Vigilant's breach of its contractual duty to pay such costs.

In December 2004, Vigilant moved to dismiss the complaint pursuant to CPLR 3211 (a) (1) and (7) and sought an order declaring that, pursuant to the employment practices exclusion, it was not obligated to provide coverage for the Clarett litigation. Specifically, Vigilant argued that Clarett's federal action against the NFL alleged a "wrongful deprivation of a career opportunity," which was one of the 12 enumerated employment practices expressly excluded under the policy. In opposition, the NFL argued that the employment practices exclusion applies only to employment law claims brought against the NFL, not violations of the antitrust laws, which are not laws "relating to employment or employees."

Supreme Court granted Vigilant's motion and declared that it was not obligated to provide coverage for the Clarett litigation. The court found that Clarett's federal claim challenging the NFL's draft eligibility rule fell within the plain meaning of "wrongful deprivation of a career opportunity," and thus was unambiguously excluded under the policy. The court further noted that the underlying legal theory of the Clarett litigation— violation of the antitrust laws—was irrelevant to the applicabil-

ity of the exclusion, since "[t]he list of excluded items in the definition clearly refers to factual bases for lawsuits that may give rise to various causes of action[,] not to any particular cause of action."

On appeal, the NFL argues that the Clarett antitrust action did not fall within the terms of the employment practices exclusion because the exclusion is limited to claims alleging violations of employment laws, not antitrust laws. At the very least, the NFL argues, the employment practices exclusion is ambiguous in its scope and must therefore be construed in favor of the insured, here the NFL. We agree with both arguments and reverse.

The standard for determining the applicability of an insurance policy exclusion to a particular claim is well established in New York law. "To negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case" (*Continental Cas. Co. v Rapid-American Corp.*, 80 NY2d 640, 652 [1993]). Thus, "policy exclusions are given a strict and narrow construction, with any ambiguity resolved against the insurer" (*Belt Painting Corp. v TIG Ins. Co.*, 100 NY2d 377, 383 [2003]).

Initially, we agree with Supreme Court that the conduct underlying Clarett's federal claim appears to fit the description of one of the employment practices listed in the exclusion, namely, "wrongful deprivation of a career opportunity." Clarett's lawsuit alleged that he wanted to become employed by an NFL team, but was prevented from doing so by virtue of the NFL-imposed draft eligibility rule. Thus, for at least the period covering 2003, the NFL's rule clearly did deprive Clarett of a career opportunity and the NFL does not seriously argue to the contrary. However, it is not enough for Clarett's claim to fit within the terms of the exclusion; rather, it must do so in "clear and unmistakable language" and be "subject to no other reasonable interpretation" (*Continental Cas.*, 80 NY2d at 652). It is on this point that the parties disagree.

The NFL contends that the language, content and structure of the employment practices exclusion compel the conclusion that it is intended to apply only to claims alleging violations of common or statutory law relating to employment or employees, and not to antitrust claims that are only tangentially related to employment with an NFL team. The NFL notes that all 12 of the listed employment practices are couched in employment law

jargon, that the majority of them are commonly recognized employment law causes of action and that the "catchall" provision of the exclusion cites specific employment law statutes and employee benefit laws. It further emphasizes that each of the employment practices listed in the exclusion relate to claims that typically are brought by an employee against his or her actual, former or prospective employer. Here, in contrast, the Clarett claim was not made against a prospective employer (an NFL club), but rather was made against the NFL, which does not employ NFL players.

In addition, the NFL relies on the principle of statutory construction known as "reverse ejusdem generis" to support its interpretation of the employment practices exclusion (*see Safe Food & Fertilizer v Environmental Protection Agency*, 350 F3d 1263, 1269 [DC Cir 2003] [explaining that under principle of reverse ejusdem generis, the phrase " 'A, B or any other C' indicates that A is a subset of C"]). As indicated above, the subject exclusion identifies 12 excluded employment practices, followed by a catchall provision that further excludes any claim for "violation of any other federal, state, local or common law, statute, ordinance, rule or regulation or any public policy relating to employment or employees." Relying on reverse ejusdem generis, the NFL argues that the 12 excluded employment practices must be interpreted in light of the limiting language of the catchall provision referring to a "violation of any other . . . law . . . relating to employment or employees." In other words, the NFL contends that since the antitrust laws are not "any other . . . law" relating to employment or employees, Clarett's claim is not within the exclusion.

Vigilant, on the other hand, argues that the employment practices exclusion clearly and unambiguously excludes any claim against the NFL for wrongful deprivation of a career opportunity, and that Clarett's federal claim plainly fits within this definition. It further contends that the NFL's interpretation of the exclusion to cover only employment law causes of action is unreasonable and strained, and cannot defeat the plain meaning of the policy terms. Finally, it notes that several of the 12 employment practices listed in the exclusion—including wrongful deprivation of a career opportunity, failure to grant tenure, and negligent evaluation—are not recognized employment law claims, thus undermining the NFL's narrow interpretation of the exclusion.

We find that because the NFL has offered a plausible interpretation of the employment practices exclusion that would

result in a determination of coverage, its position must be sustained (*see RJC Realty Holding Corp. v Republic Franklin Ins. Co.*, 2 NY3d 158, 165 [2004]). As the NFL argues, it is undeniable that 7 of the 12 employment practices expressly listed in the exclusion are either recognized employment causes of action (wrongful termination, breach of contract, violation of employment discrimination laws) or are other recognized tort causes of action that are required to be "employment-related" (employment-related misrepresentation, employment-related invasion of privacy, employment-related defamation and employment-related wrongful infliction of emotional distress). In addition, the fact that the exclusion's catchall provision specifically mentions six employment law statutes and four categories of employee benefit laws further supports the NFL's argument that the intent of the exclusion was to remove from coverage only those claims alleging a violation of employment rights.

More significantly, all 12 of the listed employment practices appear to contemplate the existence of an actual, former or prospective employment relationship between the claimant and the NFL. It is clear that many of the listed employment practices—including wrongful termination, breach of contract, violation of antidiscrimination laws, wrongful failure to employ or promote, wrongful discipline, failure to grant tenure or negligent evaluation—could only be brought in the context of an employee-employer relationship. Further, it may be fairly assumed that the "employment-related" torts listed in the exclusion must also be predicated on an actual employment relationship (*see Peterborough Oil Co., Inc. v Great Am. Ins. Co.*, 397 F Supp 2d 230, 238-239 [D Mass 2005] [term "employment-related" in exclusion had narrow meaning; it was intended to refer only to matters concerning the employment relationship itself, and not all matters that concern or relate to employees]). By contrast, Clarett's antitrust claim against the NFL did not arise from any actual or prospective employment relationship with the NFL, as it is undisputed that NFL players are employees of individual NFL teams, not the NFL itself.

It is true that "wrongful deprivation of a career opportunity" does not, on its face, require an existing or prospective employment relationship. Although Vigilant views this as evidence that the exclusion extends beyond traditional employment law claims, we cannot view this single employment practice in isolation. Under the principle of statutory construction known as

noscitur a sociis, which translates to "it is known from its associates" (McKinney's Cons Laws of NY, Book 1, Statutes § 239 [a]), we interpret the meaning of "wrongful deprivation of a career opportunity" by considering it in context of the other 11 listed employment practices with which it is associated—all of which describe employment law claims or workplace torts traditionally brought by a prospective, current or former employee against an employer.

In light of the exclusion's clear focus on employment claims arising out of the employment relationship, it is reasonable to interpret the policy to exclude only employment practices that occur in a direct employment context (see North Am. Bldg. Maintenance, Inc. v Fireman's Fund Ins. Co., 137 Cal App 4th 627, 642, 40 Cal Rptr 3d 468, 480 [Ct App, 5th Dist 2006] [language of employment practices exclusion reasonably interpreted to require actual, former or prospective employment relationship]; Peterborough Oil Co., 397 F Supp 2d at 241-242 [exclusionary language requiring "employment-related act or omission" is inherently ambiguous and therefore inapplicable to malicious prosecution claim by former employee]).

Nor is there any language in the exclusion to suggest that a claim against the NFL not arising out of an employment relationship would be excluded. Had Vigilant intended to exclude wrongful deprivations of career opportunities arising outside the direct employment context, such as the Clarett situation, it could have accomplished this result by including language clearly indicating that the exclusion was not limited to the NFL's liability as an employer. Here, however, the language of the employment practices exclusion did not clearly and unambiguously indicate that it extended to the NFL's liability as a nonemployer, and such ambiguity concerning its scope must be construed in favor of the insured.

To conclude that a claim alleging antitrust violations against a nonemployer unambiguously falls within an exclusion that is focused almost entirely on employment wrongs by an employer would, in our view, destroy the internal consistency of the employment practices exclusion. At the very least, it was reasonable for the NFL to interpret "wrongful deprivation of a career opportunity" to apply only to claims brought by current, former or prospective employees of the NFL, and not to the NFL's role in setting draft eligibility criteria.

The motion court's finding that the list of excluded items in the definition refers to "factual bases for lawsuits," and not to

any particular cause of action, does not compel a different result. As indicated above, a reasonable interpretation of the exclusion is that it applies only to claims against an employer arising out of an actual or potential employment relationship, and no such relationship exists here between Clarett and the NFL.

For similar reasons, the parties' disagreement over whether wrongful deprivation of a career opportunity, failure to grant tenure and negligent evaluation constitute recognized employment law causes of action is beside the point. The NFL has shown that claims fitting these descriptions have been asserted in the direct employment context, and, to that extent, they are consistent with the other nine employment practices listed in the exclusion. We reiterate, it is not the NFL's burden to show all 12 of the employment practices listed are recognized causes of action; rather, it is Vigilant that must demonstrate that the NFL's interpretation of the exclusion—that it is limited to employment law claims arising from a direct employment relationship—is unreasonable. In our view, Vigilant has failed to meet this burden and its motion to dismiss should have been denied.

Accordingly, the order of the Supreme Court, New York County (Bernard J. Fried, J.), entered July 22, 2005, which granted defendant's motion to dismiss the complaint and declared that, under the terms of an insurance policy issued by defendant to plaintiff, defendant had no duty to compensate plaintiff for loss incurred in defending a federal lawsuit, should be reversed, on the law, with costs, the motion denied and the matter remanded for further proceedings.

SULLIVAN, J.P., WILLIAMS, CATTERSON and McGUIRE, JJ., concur.

Order, Supreme Court, New York County, entered July 22, 2005, reversed, on the law, with costs, defendant's motion to dismiss the complaint denied and the matter remanded for further proceedings.