**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 20, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

GLACIER CONSTRUCTION
COMPANY, a Colorado corporation,

      Plaintiff-Appellant/
      Cross-Appellee,

v.

TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA, a
Connecticut corporation,

      Defendant-Appellee/
      Cross-Appellant.

Nos. 12-1503 & 12-1514
(D.C. No. 1:10-CV-01911-RPM)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **PHILLIPS**, **McKAY**, and **ANDERSON**, Circuit Judge.

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Glacier Construction Co. (Glacier) appeals the district court's order on summary judgment limiting its recovery under a builder's risk insurance policy (Policy) issued by Travelers Property Casualty Co. (Travelers). Glacier also appeals the grant of summary judgment in favor of Travelers on its claim for bad-faith denial of insurance coverage, as well as the court's jury instruction on the nature and scope of damages recoverable under the Policy. Travelers has filed a cross appeal asserting that none of Glacier's claimed damages were covered by the Policy.[1] We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

## I. BACKGROUND

In early 2009, Glacier contracted with the City of Aurora, Colorado, to construct a new wastewater pumping facility. Before construction could begin, excess water had to be removed from the site by a process called "dewatering." To accomplish the necessary dewatering, Glacier installed four submersible wells and pumps (referred to herein as the original wells/pumps), which performed as designed and expected until May and June 2009, when above-average rainfall caused them to fail. Soil got into the original wells/pumps due to the type of soil and the amount of

---

[1]     Glacier originally filed suit in Colorado state court. Travelers removed the case to federal court, invoking diversity jurisdiction. *See* 28 U.S.C. §§ 1332, 1441(b), 1446.

erosion and sediment. As a result, Glacier developed a second dewatering plan that included replacement wells/pumps, and added shoring, engineering tie-backs, and a well-point system. Glacier made a claim on the Policy for the additional costs it incurred to dewater the site, which Travelers denied.

The relevant Policy terms provided coverage for "direct physical loss of or damage to Covered Property from any of the Covered Causes of Loss." Aplt. App. Vol. 1 at 50. "Covered Causes of Loss" were defined as "RISKS OF DIRECT PHYSICAL LOSS OR DAMAGE." *Id.* "Covered Property" was defined as "Builders' Risk," *id.*, which was, in turn, defined as:

a. Buildings or structures including temporary structures while being constructed, erected, or fabricated at the "job site,"

b. Property that will become part of a permanent part of the buildings or structures at the "job site:"

   (1) While in transit to the "job site" or at a temporary storage location;

   (2) While at the "job site" or at a temporary storage location;

"Builders' Risk" does not include:

a. Contraband, or property in the course of illegal transit or trade;

b. Buildings or structures that existed at the "job site" prior to the inception of this policy;

c. Land (including land on which the property is located) or water.

*Id.* at 61-62.

The Policy also provided coverage for "'Builders' Risk' Site Preparation" as follows:

If:

(1) The cost of excavation, site preparation, land grading and similar work is included in the "Basic Limit of Insurance" for the "job site" shown in the Declarations; and

(2) You incur expenses to reexcavate the site, reprepare the site, regrade the land, or reperform similar work because of loss of or damage to Covered Property by a Covered Cause of Loss,

you may extend the applicable Limit of Insurance for that "job site" to pay for such expense.

*Id.* at 51.

Glacier filed suit to recover from Travelers all of the costs for the second dewatering plan. The parties eventually filed cross-motions for summary judgment. Travelers argued that the Policy did not cover any of the expenses Glacier incurred due to the failure of the original wells/pumps. The district court rejected that argument, however, and ruled that the Policy covered the "cost of repairing and reworking [the original] four wells and pumps. [Glacier's] claim is limited to those costs." *Id.* Vol. 2 at 279. Based on that ruling, Travelers asserted that the covered costs totaled $9,142.25, while Glacier claimed that its covered costs were $473,884.31.

- 5 -

In a separate order, the district court granted summary judgment to Travelers on Glacier's claim that Travelers denied coverage in bad faith. The case proceeded to a jury trial to determine the amount of the covered costs. The jury returned a verdict in Glacier's favor in the amount of $9,142.25 plus post-judgment interest and costs.

On appeal, Glacier challenges (1) the district court's ruling limiting its damages to the cost of repairing and reworking the original wells/pumps, (2) a jury instruction it claims improperly limited the amount of damages, and (3) the summary judgment in Travelers' favor on its claim for bad-faith denial of insurance coverage. Travelers cross appeals, arguing that the district court erred in ruling that any of Glacier's costs were covered by the Policy or, in the alternative, that Glacier's recovery is limited to the jury award of $9,142.25.

## II.    LEGAL STANDARDS

"We review the district court's grant of summary judgment *de novo*, applying the same legal standard used by the district court. We also review the district court's interpretation of the insurance policies *de novo*." *Old Republic Ins. Co. v. Durango Air Serv., Inc.*, 283 F.3d 1222, 1225 (10th Cir. 2002) (citation omitted). Colorado law applies to this dispute because "Colorado has the most significant relationship to

the insuring transaction and to the parties."  *Id.* at 1226 n.6.  Further, both parties agree that Colorado law applies.  *See id.*

"Builder's risk policies typically indemnify a contractor against the loss of, or damage to, a building the contractor is constructing."  *Copper Mountain, Inc. v. Indus. Sys., Inc.*, 208 P.3d 692, 694 n.7 (Colo. 2009) (en banc).  "Under Colorado law, in the absence of an ambiguity, an insurance contract must be given effect according to the ordinary and accepted sense of the terms contained therein."  *Old Republic Ins. Co.*, 283 F.3d at 1226 (citing *In re Estate of Daigle*, 634 P.2d 71, 79 (Colo. 1981) (en banc)).[2]  If the insured shows that the loss is covered by the policy, "the insurance carrier has the burden of proving that the proximate cause of the loss was excluded by the policy language."  *Leprino Foods Co. v. Factory Mut. Ins. Co.*, 453 F.3d 1281, 1287 (10th Cir. 2006) (internal quotation marks omitted) (construing an all-risk policy; applying Colorado law).  The insurance carrier has the burden "to establish the applicability of an exclusion from coverage.  Any exclusion must be clear and specific to be enforceable."  *Id.* (internal quotation marks omitted).

## III.   POLICY COVERAGE

---

[2]      In this case neither party claims the Policy is ambiguous.

We first address the cross appeal, wherein Travelers argues that none of the costs incurred by Glacier following the failure of the original wells/pumps was covered by the Policy. Travelers relies on the policy language quoted above providing coverage for "direct physical loss of or damage to Covered Property from any of the Covered Causes of Loss." Aplt. App. Vol. 1 at 50. Travelers contends that the district court erred in concluding that the original wells/pumps were Covered Property, that they sustained physical damage, and that the damage was from a Covered Cause of Loss.

"Covered Property" refers to "[b]uildings or structures including temporary structures while being constructed, erected, or fabricated at the 'job site,' [and] "[p]roperty that will become a permanent part of the buildings or structures at the 'job site.'" *Id.* at 61. Travelers maintains that the original wells/pumps were not "structures" and did not become a permanent part of the wastewater facility; rather, they were removed after dewatering was complete. But the Policy covered "temporary structures." *Id.* Moreover, the original wells/pumps did not fall within the Policy exclusions. Consequently, we agree with the district court that the original wells/pumps "were temporary structures constituting covered property." *Id.* Vol. 2 at 279.

- 8 -

Travelers next asserts that the original wells/pumps did not sustain physical damage from a covered cause of loss. According to Travelers, to be covered the loss had to be caused by a "casualty, catastrophe, or disaster," Aplee. Principal Br. at 44, although Travelers does not point to a Policy clause requiring this. Travelers contends that the rainfall did not qualify because for the period May through August the rains were only 10% above average. But Glacier presented evidence that the damage was caused by above-average rain that fell in surges, so averaging the rainfall over a several-month period was not relevant. We conclude that heavy rains were within the Policy coverage. An "occurrence sufficient to trigger coverage . . . need not be sudden, but must be a specific accident or happening . . . . A long term exposure to a harmful condition that results in damage or injury may be an occurrence." *Hoang v. Assurance Co. of Am.*, 149 P.3d 798, 802 (Colo. 2007) (en banc) (citation omitted) (construing an "occurrence" policy).

Travelers next argues that the discovery of site conditions different from those planned for (more groundwater and different soils) was not covered because it was not a catastrophic event that caused physical loss or damage. Travelers claims that the original dewatering plan should have taken these conditions into account and that the discovery of the different conditions was not a covered cause of loss. But the evidence showed that it was the surging rain that caused the soil to erode and get into

the original wells/pumps, causing them to fail.  As stated above, the heavy rains were within the Policy coverage.

Travelers further argues that the original wells/pumps did not require *repair* due to a covered event, but rather, they required only *maintenance* due to normal wear and tear, an expense not covered by the Policy.  But the witnesses, including Travelers' expert witness, discussed the necessary *repairs* to the original wells/pumps caused by the surging rains and eroding soil.  *See, e.g.,* Aplt. App. Vol. 4 at 696-97.  Thus, we reject this argument.

Lastly, Travelers asserts that the damage to the original wells/pumps was caused by the faulty or negligent soils report.  Glacier stated that part of the need for repairs to the original wells/pumps was caused by the discovery of soils different from those identified in the soils report.  Therefore, Travelers argues that the soils report, not the rains or other events, was responsible for the damage.  Travelers invokes a Policy exclusion for loss or damage caused by "[o]mission in, or faulty, inadequate or defective . . . [p]lanning, zoning, development, surveying, siting, design or specifications."  Aplt. App. Vol. 1 at 56-57.  But Travelers' mere assumption that the soils report was faulty or negligent, without evidence to support this assumption, is insufficient to carry its burden to establish the applicability of the exclusion from coverage.  *See Leprino Foods Co.*, 453 F.3d at 1287.

- 10 -

## IV.    SCOPE OF COVERAGE

Having determined that the Policy covered the damage to the original wells/pumps, we address Glacier's claim that the district court improperly limited the scope of its recovery. Glacier relies on the Site Preparation clause, which it contends covered its costs to design a new dewatering plan and to install a shoring system, engineering tie-backs, and a well-point system.

The relevant Policy clause covered costs necessary to re-excavate the site, re-prepare the site, re-grade the land, or re-perform similar work. The ordinary and accepted sense of the Policy terms limited coverage to correction of work previously done. It did not cover the expense of a new dewatering design and the costs to implement that design. Construing the Policy as Glacier advocates would encourage a builder to economize on an initial dewatering plan and later require the insurer to pay for a more elaborate plan. This would misallocate the construction expense between the construction company and the insurer. *Cf. MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1192 (10th Cir. 2009) (holding insurance all-risk policy did not cover routine maintenance of covered property because doing so would shift ordinary cost of doing business from insured to insurer). Therefore, we hold as a matter of law that the Policy coverage was limited to the repair and reworking of the original wells/pumps, as determined by the district court.

- 11 -

## V.     JURY INSTRUCTIONS

Glacier's next issue on appeal is closely related to the first.  Glacier challenges

a jury instruction it claims improperly limited the amount of damages.

> We review de novo whether a district court's jury instructions
> correctly stated the governing law.  We review the district court's
> decision about whether to give a particular instruction for abuse of
> discretion.  Under federal law, a party is entitled to an instruction on his
> theory of the case if it is supported by competent evidence.  In making
> this determination, we review the evidence in the light most favorable to
> the verdict.

*Pratt v. Petelin*, 733 F.3d 1006, 1009 (10th Cir. 2013) (citations and internal

quotation marks omitted).

The jury instruction at issue is as follows:

> The four dewatering wells and submersible pumps installed by Glacier in May 2009 were temporary structures that constitute property covered by the Travelers insurance policy. Damage to these structures from the intrusion of water and soil or sand is a covered loss. Accordingly, Travelers must pay for the cost of repairing and reworking those four wells and pumps. <u>What is in dispute in this case is whether the plaintiff is seeking to recover costs that go beyond what was necessary for such repair and reworking of those structures.  Travelers did not insure for the cost of achieving an effective dewatering system.</u>

Aplt. App. Vol. 5 at 823-24 (emphasis added). Glacier objected to the emphasized language on the ground that it directed the jury to adopt Travelers' theory of the case, which was that most of the costs Glacier sought were not incurred to repair and rework the original wells/pumps, but instead were above and beyond the necessary repairs and thus were not recoverable.

Glacier argues that the challenged instruction improperly limited the scope of covered costs and "effectively precluded the jury from considering costs covered under the 'Builder's Risk' Site Preparation portion of the Policy," Aplt. Reply Br. at 46.[3] Glacier proposed language instructing the jury to determine what was

---

[3]     Travelers asserts that Glacier did not base its objection to the proposed instruction on the Policy language of the Site Preparation clause, and thereby waived the argument. But Glacier challenged the proposed instruction on the ground that it did not instruct the jury to consider all of the necessary repair costs. We conclude that this objection sufficiently preserved the issue.

necessary to repair and rework the original wells/pumps. In addition, Glacier requested an instruction that the jury should award the costs it incurred to repair nondefective work that was necessary for the repair and reworking of the original wells/pumps. For this argument, Glacier relies on *Colorado Pool Systems, Inc. v. Scottsdale Insurance Co.*, 317 P.3d 1262 (Colo. App. 2012), *cert. granted*, No. 12SC1000, 2013 WL 4714283 (Colo. Sept. 3, 2013). There, the dispute was whether the commercial general liability policy covered repairs to nondefective property that was damaged during the correction of "the builder's own faulty workmanship." *Id.* at 1266, 1271. The Colorado Court of Appeals held that the cost of repairing and replacing the insured's defective work was not covered, but the cost of repairing damage to nondefective work that occurred in the course of repairing the defective work was covered. *Id.* at 1271.

The district court rejected Glacier's proffered instructions for two reasons: first, the instructions did not comport with the interpretation of the Policy previously determined by the court; and second, Glacier produced no evidence of damage to other work. Aplt. App. Vol. 2 at 373. Glacier argues that its evidence of damage to other work was testimony that obtaining the second dewatering plan, re-casing and excavating around the original wells/pumps, installing additional pumps, and installing the well-point system were necessary to reach and repair the original

- 14 -

wells/pumps. *See* Aplt. Reply Br. at 45-46. Consequently, Glacier contends that under *Colorado Pool Systems* it was entitled to have the jury instructed that the costs of obtaining the second dewatering plan, the additional excavating, and the installation of additional equipment were covered expenses.

Glacier's reliance on *Colorado Pool Systems* is misplaced primarily because the relevant policy language at issue in that case, which involved a commercial general liability policy, is not similar to the builder's risk policy language at issue here. *See Colo. Pool Systems*, 317 P.3d at 1268. Moreover, in contrast to *Colorado Pool Systems*, Glacier does not assert that any property was damaged by "the builder's own faulty workmanship," *see id.* at 1266, or that the original wells/pumps were damaged during the repair of faulty work, *see id.* at 1271. Therefore, we find no abuse of discretion in the district court's decision not to give Glacier's requested *Colorado Pool Systems* instruction. Furthermore, given our holding above that the scope of the Policy coverage was limited to repairing and reworking the original wells/pumps, we conclude that the district court did not abuse its discretion in instructing the jury as it did.

## VI. BAD-FAITH DENIAL OF COVERAGE

Finally, we address Glacier's claim that Travelers denied its claim for Policy coverage in bad faith. Glacier avers that Travelers is liable under both Colorado

- 15 -

common law and Colorado statutes. It argues that Travelers' bad faith extended to (1) its delay in making the initial claims decision, (2) its failure to request information or clarification from Glacier during its investigation, (3) its decision not to entertain Glacier's request to reconsider the claim denial, and (4) its refusal to pay the claim even after the district court ruled that the original wells/pumps were covered property.

As set forth above, we review de novo the district court's entry of summary judgment in Travelers' favor. Under Colorado common law, all insurance contracts "contain[] an implied duty of good faith and fair dealing." *Goodson v. Am. Standard Ins. Co. of Wis.*, 89 P.3d 409, 414 (Colo. 2004) (en banc). "[A] separate action in tort [arises] when the insurer breaches its duty of good faith and fair dealing." *Am. Family Mut. Ins. Co. v. Allen*, 102 P.3d 333, 342 (Colo. 2004) (en banc). In a first-party insurance contract such as this one, to establish a bad-faith claim, the insured "must prov[e] that the insurer acted unreasonably under the circumstances [and] that the insurer either knowingly or recklessly disregarded the validity of the insured's claim." *Goodson*, 89 P.3d at 415. The insurer's conduct is evaluated objectively to determine whether a "reasonable person would find that the insurer's justification for denying or delaying payment of a claim was 'fairly debatable' (i.e., if reasonable minds could disagree as to the coverage-determining facts or law)."

*Sanderson v. Am. Family Mut. Ins. Co.*, 251 P.3d 1213, 1217 (Colo. App. 2010).

Moreover, "resort to a judicial forum does not necessarily evince bad faith or unfair dealing, regardless of the outcome of the proceeding." *Id.* Even a mistaken belief about whether a claim is compensable can "be within the scope of permissible challenge." *Id.*

Glacier's statutory claim is based on Colo. Rev. Stat. §§ 10-3-1115 & 10-3-1116, which provide for a cause of action against an insurer that has unreasonably delayed or denied a claim. Such a civil action "is in addition to, and does not limit or affect, other actions available by statute or common law." *Vaccaro v. Am Family Ins. Grp.*, 275 P.3d 750, 756 (Colo. App. 2012) (internal quotation marks omitted). A "statutory claim requires only that a first-party claim be denied without a reasonable basis. Thus, the standard contained in § 1115 arguably is less onerous on the insured, and the remedies contained in § 1116 are more financially threatening to the insurer than a traditional common law bad faith claim." *Id.* (brackets and internal quotation marks omitted). In a statutory claim, "the only element at issue . . . is whether an insurer denied benefits without a reasonable

basis." *Id.* at 760. And as with a common law claim, "it is reasonable for an insurer to challenge claims that are 'fairly debatable.'" *Id.* at 759.[4]

Glacier correctly points out that a "fairly debatable" showing, standing alone, is insufficient to support summary judgment for the insurer under both the statutes and the common law. *See id.* at 759-60 (statutory claim); *Sanderson*, 251 P.3d at 1217-18 (common law claim). This does not, however, preclude summary judgment where "there are no genuine issues of material fact [and] reasonableness may be decided as a matter of law." *Schuessler v. Wolter*, 310 P.3d 151, 162 (Colo. App. 2012) (internal quotation marks omitted).

The chronology of relevant events is as follows:

- July 30, 2009        Glacier tendered its claim to Travelers

- Aug. 26, 2009        Travelers apprised Glacier that photos of the job site would be taken and requested additional information from Glacier

---

[4]        Glacier also invokes Colorado Division of Insurance Regulation 5-1-14, which states that the insurer's decision should be made within sixty days after receipt of the claim, "unless there is a reasonable dispute between the parties concerning such claim." Colo. Div. of Ins. Reg. § 5-1-14(4)(A)(1)(a); *see also id.* § 5-1-14(4)(A)(2)(b) (identifying relevant reasonable disputes as "[c]overage under the policy for the loss claimed has not been determined; . . . [i]ndicators are present in the application or submission of the claim and additional investigation is necessary; [or] [l]itigation is commenced on the claim"). The regulation directs the insurer to act reasonably; therefore, our discussion and conclusions on Glacier's statutory and common law claims also apply to the regulation.

- Sept. 16, 2009    Glacier sent Travelers a summary of damages

- Oct. 14, 2009    Travelers informed Glacier that it was investigating the claim and had assigned a claim adjuster

- Oct. 22, 2009    The claim adjuster met with Glacier personnel at the job site and requested further documents, which were provided forthwith

- Nov. 3, 2009    Glacier sent additional information to Travelers

- Dec. 2, 2009    Travelers denied the claim

- Feb. 16, 2010    Glacier's attorneys requested reconsideration

- Mar. 24, 2010    Travelers reiterated its denial of the claim

- July 15, 2010    Glacier filed suit against Travelers

- Sept. 22, 2011    District court ruled that the Policy covered the costs of repairing and reworking the original wells/pumps

- Oct. 2011    Travelers hired an expert to evaluate Glacier's expenses that fell within the district court's order

- Mar. 14, 2012    Travelers' expert prepared an interim report

- Apr. 30, 2012    Travelers informed Glacier that it was continuing to investigate the claim and requested cost backup documents

- May 3, 2012    Glacier provided the cost backup documents

- July 26, 2012    Travelers' expert issued his final cost analysis

- Aug. 15, 2012      Travelers' proffered to Glacier its coverage determination of $9,142.25

Glacier argues that Travelers' bad faith was demonstrated by the four-month interval between Glacier's claim submission and Travelers' decision to deny the claim. Glacier asserts that Travelers' claim-processing conduct was unreasonable because Travelers did not request additional information or request to inspect the job site between the claim filing on July 30, 2009, and the claim denial on December 2, 2009. Aplt. Opening Br. at 29. This assertion is belied by the record, which includes an email from Travelers to Glacier dated August 26, 2009, seeking to arrange an inspection of the job site and requesting additional information. Aplt. App. Vol. 1 at 46 (attachment to the parties' "Stipulated Facts"). In addition, the record reflects that on October 22, 2009, the claim adjuster met with Glacier personnel at the job site and requested further documents. *Id.* Vol. 2 at 304-05, 329-30.[5] Following its receipt of additional documents in early November 2009, Travelers made the claim decision on December 2, 2009. Based on the undisputed facts, summary judgment was appropriate because no reasonable jury could have found that Travelers

---

[5]      We recognize Glacier's argument that Glacier, not Travelers, initiated some of the claim-processing communications, which Glacier contends demonstrates Travelers' failure to process the claim in a timely fashion. But Glacier cites no authority for its position that the insurance company must request information before the insured provides it or risk a finding of bad faith. We decline to adopt such a rule.

unreasonably delayed or denied processing Glacier's claim, a determination that is fatal to both the statutory and common law claims.

Glacier also contends that Travelers' bad faith was demonstrated by Travelers' decision not to reconsider its initial denial of the claim and its delay in tendering payment even after the district court ruled that the original wells/pumps were covered by the Policy. "Th[e] duty of good faith and fair dealing continues unabated during the life of an insurer-insured relationship, including through a lawsuit or arbitration between the insured and the insurer, although the adversarial nature of such proceedings may suspend the insurer's obligation to negotiate as a reflection of good faith." *Sanderson*, 251 P.3d at 1217.

Glacier avers that Travelers acted unreasonably by denying reconsideration without further investigation or discussion and that Travelers' refusal to ascertain and tender "the undisputed amount owed" until just before trial was in bad faith, Aplt. Opening Br. at 33.[6] But Travelers did not merely refuse Glacier's reconsideration

---

[6]     Glacier relies on its expert's opinion "that Travelers had continued to unreasonably delay[] payment of the claim after receipt of the Court's order [holding that the Policy covered the repair and reworking of the original wells/pumps]." Aplt. Opening Br. at 29. But this conclusory opinion does not establish a genuine issue of material fact. *See Zolman v. Pinnacol Assurance*, 261 P.3d 490, 500 (Colo. App. 2011) (noting that expert's "affidavit and report simply state his conclusory opinions that [the insurer] acted in bad faith without establishing any genuine issue of material fact").

request; rather, Travelers engaged an expert, informed Glacier of the expert's interim report, and requested additional documentation. Moreover, the amount owed was disputed throughout the trial. Accordingly, applying the appropriate standards, we conclude that no reasonable jury could have found on the evidence presented that Travelers' post-claim-denial conduct unreasonably delayed or denied Glacier's claim. Again, this determination is fatal to both the statutory and common law claims. Summary judgment in Travelers' favor was therefore appropriate on Glacier's bad-faith claims.

## VII.   CONCLUSION

The judgment of the district court is affirmed.

Entered for the Court

Monroe G. McKay
Circuit Judge