# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term 2024

(Argued: February 21, 2025          Decided: February 12, 2026)

No. 24-1069

—————————————————————

REIDY CONTRACTING GROUP, LLC; MERCHANTS MUTUAL INSURANCE COMPANY,

*Plaintiffs-Appellees,*

-v.-

MT. HAWLEY INSURANCE COMPANY,

*Defendant-Appellant.*

—————————————————————

Before:     LIVINGSTON, *Chief Judge,* MENASHI, and MERRIAM, *Circuit Judges.*

Defendant-Appellant Mt. Hawley Insurance Company appeals a final judgment entered on March 29, 2024, by the United States District Court for the Western District of New York (Crawford, *J.*), denying its motion for summary judgment and granting Plaintiffs-Appellees Reidy Contracting Group, LLC and Merchants Mutual Insurance Company summary judgment.   On appeal, Mt. Hawley argues that the district court erred in holding that Reidy was an additional insured and that the Employers Liability Exclusion did not bar coverage.   We disagree.   We hold that Reidy is an additional insured and that, because the Exclusion is ambiguous, we must construe it against the drafter, Mt. Hawley, in

1

accordance with *contra proferentem*. We therefore **AFFIRM** the judgment of the district court.

JUDGE MENASHI dissents in a separate opinion.

FOR PLAINTIFFS-APPELLEES: RICHARD A. GALBO (Ashlyn M. Capote, *on the brief*), Goldberg Segalla LLP, Buffalo, NY.

FOR DEFENDANT-APPELLANT: TIMOTHY E. DELAHUNT, Delahunt Law PLLC, Buffalo, NY.

DEBRA ANN LIVINGSTON, *Chief Judge*:

A ceiling collapsed at a construction site, injuring three workers. This insurance dispute ensued. The question presented is whether Mt. Hawley Insurance Company ("Mt. Hawley"), which issued an excess liability policy to Vanquish Contracting Corporation ("Vanquish"), the subcontractor, is required to provide additional insurance coverage to the general contractor on the site, Reidy Contracting Group, LLC ("Reidy"). The United States District Court for the Western District of New York (Crawford, *J.*) said yes, and granted summary judgment to Reidy and its commercial general liability insurer, Merchants Mutual Insurance Company ("Merchants"). Mt. Hawley now appeals, contending that Reidy is not an additional insured under its policy and that its Employers Liability Exclusion bars coverage. We disagree, and affirm the judgment of the district court.

2

## BACKGROUND

### I.  Factual Background[1]

Reidy was the general contractor for a demolition project at 160 Lexington Avenue, New York.   In 2012, Reidy hired Vanquish as a subcontractor.   As a condition of this arrangement, Reidy required Vanquish to procure insurance that would protect Reidy as an additional insured from claims arising, *inter alia*, "out of or in any way connected with the operations performed hereunder by or on behalf of [Vanquish] . . . without regard to the negligence of any of them or any . . . other subcontractor."   A-313.[2]

Consistent with this agreement, Vanquish entered into an excess liability contract with Mt. Hawley in which Vanquish is the named insured and the word "insured" is otherwise defined as "any person or organization qualifying as an insured under the terms of the underlying insurance."[3]   A-754.   This policy is in excess to Vanquish's commercial general liability coverage with Endurance

---

[1]   The factual background presented here is based on undisputed facts from the parties' submissions at summary judgment.

[2]   Citations to the Appendix are indicated using the prefix "A."

[3]   The named insured is the party who purchases the insurance at hand.   Under "ordinary interpretation of an ordinary business contract," the additional insured party is anyone other than the named insured who is protected by the policy.   *Kerrigan v. RM Assocs., Inc.*, 892 N.Y.S.2d 350, 351–52 (App. Div. 2009).

American Specialty Insurance Company ("Endurance").

### a. The Insurance Policy

The Mt. Hawley policy provides that "except where provisions to the contrary appear herein," it "is subject to all of the conditions, agreements, exclusions, and limitations of and shall follow the **underlying insurance** in all respects." A-754. We therefore treat the underlying insurance policy—the Endurance policy—as being subsumed in the Mt. Hawley policy. Three provisions are particularly relevant to this appeal: 1) the "Coverage Grant" in the Endurance policy, which sets out the policy's general scope of protection; 2) the "Employers Liability Exclusion" in the Mt. Hawley policy, which details conditions under which covered entities will be denied coverage; and 3) the "Separation of Insureds Clause" in the Mt. Hawley policy, which explains how to interpret the policy.

### 1. Coverage Grant

The Mt. Hawley policy defines an insured as "any person or organization qualifying as an insured person under the terms of the underlying insurance." A-754. The underlying Endurance policy, in turn, provides that "[t]he following are included as additional insureds":

Any entity required by written contract . . . to be named as an insured is an insured but only with respect to liability arising out of [Vanquish's] premises, "[Vanquish's] work" for the additional insured, or acts or omissions of the additional insured, in connection with their general supervision of "[Vanquish's] work" to the extent set forth below.

A-833.[4]

## 2. Employers Liability Exclusion

In the Mt. Hawley policy, the Employers Liability Exclusion establishes that

---

[4] The Limitations Clause in the Endurance policy provides further that the insurance does not apply to:

a) "Bodily injury" or " property damage" occurring after:

1) All work on the project (other than service maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed; or

2) That portion of "[Vanquish's] work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

b) "Bodily injury" or "property damage" arising out of any act, omission or negligence of the additional insured(s) or any of their "employees" or "temporary workers", other than the general supervision of work performed for the additional insured(s) by [Vanquish].

A-833–34.

the policy will not cover bodily injuries suffered by:

1. An "employee" of any insured arising out of and in the course of:

   a. Employment by the insured, or

   b. Performing duties related to the conduct of the insured's business; or

2. The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph **1.** above.

A-771.

### 3. Separation of Insureds Clause

The Separation of Insureds Clause instructs that "[e]xcept with respect to the limits of liability," the Mt. Hawley policy "applies as if each Named Insured were the only Named Insured and separately to each insured against whom claim is made or suit is brought." A-760.

### b. The Accident and Coverage

On January 8, 2013, Vanquish's employees were performing hand demolition on the interior walls of 160 Lexington Avenue. No employees from other companies were working that day. Suddenly, a portion of a decorative plaster ceiling collapsed, taking down a scaffold and three Vanquish employees. Each employee sued Reidy and the building owner for their injuries. Accordingly, Reidy requested that Endurance and Mt. Hawley undertake its

6

defense and indemnification.

Mt. Hawley refused, citing specifically to the Employers Liability Exclusion for bodily injuries suffered by:

1. An 'employee' of any insured arising out of and in the course of:

   a. Employment by the insured . . . .

A-533. Mt. Hawley explained that it reads the policy exclusion's discussion of "employment by *the* insured" to refer to the antecedent "*any* insured." *See* A-533 (emphasis added). Here, it reasoned, the three injured workers were employees of "any insured" (Vanquish). *Id.* Because the workers were injured in the course of "employment by the insured"—again, Vanquish—the Employers Liability Exclusion, Mt. Hawley asserted, "bars coverage for Reidy . . . as [an] additional insured[] on the Mt. Hawley policy." *Id.*

Reidy insisted that Mt. Hawley's interpretation is incorrect and that Mt. Hawley withdraw its disclaimer. Reidy maintained that the Separation of Insureds clause, which instructs that the policy "applies as if each Named Insured were the only Named Insured and separately as to each insured against whom claim is made or suit is brought," requires that "the exclusions in the policy" be read "as if Reidy is the only insured." A-548-49. Additionally, Reidy asserted

7

that "[t]his [reading] is the way in which employer's liability exclusions are interpreted in New York." *Id.* at 549. Therefore, it argued, "employment by the insured" in the Employers Liability Exclusion refers to the entity seeking coverage—Reidy. Although the workers were employees of any insured (Vanquish), the injuries did not arise out of the workers' employment by Reidy, the party seeking coverage. Thus, the Employers Liability Exclusion is inapplicable.

Mt. Hawley refused to withdraw its disclaimer.

## II. Procedural History

In April 2020, Reidy and Merchants sued Mt. Hawley, seeking a declaratory judgment stating, *inter alia*, that Mt. Hawley is required to provide Reidy with coverage and Mt. Hawley's refusal to do so is a breach of its policy. Mt. Hawley moved for summary judgment, contending that its interpretation of the Employers Liability Clause bars coverage to Reidy. In the alternative, it argued—for the first time—that Reidy is not an additional insured. Mt. Hawley contended that the phrase "in connection with [Reidy's] general supervision of '[Vanquish's] work'" in the Endurance policy's coverage grant modifies the preceding list of covered injuries—that is, liability arising out of Vanquish's premises, Vanquish's work for

8

Reidy, and Reidy's acts and omissions. A-833. Because the underlying suits by Vanquish's employees asserted negligence by Reidy *outside of its general supervision* of Vanquish, Mt. Hawley claimed, Reidy is not an additional insured as to these claims.

Reidy and Merchants cross-moved for summary judgment. First, Reidy insisted that "the insured" in the Employers Liability Exclusion refers to *Reidy*. Second, Reidy argued that Mt. Hawley's challenge to Reidy's status as an additional insured is precluded by New York Insurance Law Section 3420(d). This law requires an insurance company to "disclaim liability or deny coverage for death or bodily injury" via written notice "as soon as is reasonably possible." N.Y. Ins. Law § 3420(d)(2). Mt. Hawley's initial disclaimer of coverage only referenced the Employers Liability Exclusion and did not contest Reidy's status as an additional insured. Therefore, Reidy argued, it could not raise the argument now, nearly a decade later.

The district court granted summary judgment to Reidy. First, it concluded that the Employers Liability Exclusion does not apply. Based on the Separation of Insureds Clause, the district court interpreted "the insured" to refer to Reidy, the insured seeking coverage. A-1148. "Since Reidy did not employ the three

9

injured workers," the district court concluded, the exclusion does not apply. A-1149–50. In the alternative, the district court found the Employers Liability Exclusion ambiguous and interpreted it against Mt. Hawley, the drafter. Second, the district court held that Mt. Hawley is precluded from arguing that Reidy is not an additional insured pursuant to Section 3420(d).[5] It also rejected Mt. Hawley's interpretation of the Coverage Grant. The "plain language" of the Coverage Grant, the district court determined, lists each kind of covered liability in the alternative, and thus includes liabilities arising out of Vanquish's premises, its work for Reidy, *or* Reidy's acts or omissions in connection with its supervision of Vanquish. Accordingly, the question of coverage for an accident resulting in injury to Vanquish's employees while engaged in work for Reidy does not "depend on any inquiry into [Reidy's] 'general supervision'" of such work. A-2005.[6]

This appeal followed.

## DISCUSSION

---

[5] The district court reached this conclusion in a second supplemental order, after requesting additional briefing on the topic of additional insurance coverage. It thereafter granted judgment to Reidy and Merchants. Hawley appeals both summary judgment orders and the final judgment in the case.

[6] By the time the district court reached this conclusion, Reidy had settled the underlying suits with the three workers. This dispute nonetheless remains a live

10

## I.    Standard of Review

This Court reviews *de novo* a district court's grant of summary judgment. *Hayes v. Dahlke*, 976 F.3d 259, 267 (2d Cir. 2020).   Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   The Court must "view the evidence in the light most favorable to the party opposing summary judgment" and "draw all reasonable inferences in favor of that party."   *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996).   Where, as here, both parties moved for summary judgment, we examine "each party's motion . . . on its own merits" and draw "all reasonable inferences . . . against the party whose motion is under consideration."   *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

## II.    Legal Standard

Under New York law, which governs in this diversity case, the insured party carries the burden of showing that it is covered by a policy, while an insurer bears the burden of showing that a contract excludes policy coverage in the

---

controversy because it concerns whether Mt. Hawley fulfilled its obligations under a policy and whether Mt. Hawley must indemnify Merchants for a portion of the settlement amount.

particular case, and the exclusions relied on are subject to "no other reasonable interpretation." *Lend Lease (US) Constr. LMB Inc. v. Zurich Am. Ins. Co.*, 28 N.Y.3d 675, 684 (2017) (citation omitted); *MBIA Inc. v. Fed. Ins. Co.*, 652 F.3d 152, 158, 166 (2d Cir. 2011); *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 311 (1984).

To resolve the coverage dispute, "we first look to the language of the policy." *Lend Lease*, 28 N.Y.3d at 681 (quoting *Consol. Edison Co. of N.Y. v. Allstate Ins. Co.*, 98 N.Y.2d 208, 221 (2002)). An insurance contract must be read "so as to not to revise or extend the risk, but with a view toward common speech and to what was reasonably intended by the parties when the policy was written and accepted." *Cetta v. Robinson*, 535 N.Y.S.2d 805, 807 (App. Div. 1988) (citation omitted). We therefore give unambiguous terms "their plain and ordinary meaning," "constru[ing] [them] with reference to the risk, subject matter, and purpose of the policy." *Show Car Speed Shop, Inc. v. U.S. Fid. & Guar. Co.*, 596 N.Y.S.2d 608, 609 (App. Div. 1993); *Throgs Neck Bagels, Inc. v. GA Ins. Co. of N.Y.*, 671 N.Y.S.2d 66, 69 (App. Div. 1998). Words should not be "isolated from . . . context" and "[f]orm should not prevail over substance." *Kass v. Kass*,

91 N.Y.2d 554, 566 (1998) (quoting *William C. Atwater & Co., Inc. v. Pan. R.R. Co.*, 246 N.Y. 519, 524 (1927)).

Ambiguous language, however, requires different treatment. Ambiguity arises if language "could suggest 'more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" *Parks Real Est. Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006) (quoting *Morgan Stanley Grp. Inc. v. New England Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000)). When faced with ambiguous language, a court may look to extrinsic evidence to determine the parties' intent during the formation of the contract, and, if that evidence is inconclusive, apply other rules of contract construction, such as the rule of *contra proferentem*, which provides that an ambiguity should be resolved in favor of the insured. *Parks*, 472 F.3d at 43; *Morgan Stanley*, 225 F.3d at 275–76; *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 390 (2d Cir. 2005).

"In the context of an action predicated on a contract dispute, summary judgment is generally inappropriate where the contested contractual language is

ambiguous." *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010) (citation omitted). However, a court may grant summary judgment "where the extrinsic evidence illuminating the parties' intended meaning of the contract is 'so one-sided that no reasonable person could decide to the contrary'" or "'where there is no extrinsic evidence that would support a resolution of [the] ambiguities in favor of the nonmoving party's case.'" *Id.* at 115 (first quoting *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 232 F.3d 153, 158 (2d Cir. 2000), then quoting *Topps Co. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 68 (2d Cir. 2008) (alteration in original)).

### III.    Additional Insurance Coverage

The parties first dispute whether Reidy was an additional insured within the meaning of the Coverage Grant, which protects additional insureds "only with respect to liability arising out of [Vanquish's] premises, '[Vanquish's] work' for the additional insured, or acts or omissions of the additional insured, in connection with their general supervision of '[Vanquish's] work.'" A-833. On appeal, as below, Mt. Hawley reads the phrase "in connection with" to modify the entire Coverage Grant, "as reflected by the comma before the phrase." Appellant's

14

Br. 47. Therefore, Mt. Hawley claims, its policy only covers injuries arising out of Reidy's general supervision of Vanquish's work.

We disagree, beginning our explanation with the two disjunctive lists in the Coverage Grant.[7] The Coverage Grant first limits Mt. Hawley's liability to the conditions set forth in a disjunctive list—"[Reidy] is an insured only with respect to liability arising out of [Vanquish's] premises, [Vanquish's] work for [Reidy], *or* acts or omissions of [Reidy][.]" A-833 (emphasis added). But the last item on that list ("acts or omissions") is itself a disjunctive list, creating two layers of disjunction in the single sentence. That item, "acts or omissions," is then followed by a comma and a restrictive prepositional clause ("in connection with"). The question thus presented is whether the clause "in connection with" modifies the larger disjunctive list (premises, work, or acts or omissions), or the nested disjunctive list (acts or omissions) only. The answer is the latter.

Pursuant to the rule of the last antecedent, "[a] limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003); *see* 2A N. Singer,

_____

[7] In reviewing a grant of summary judgment *de novo*, we may affirm on any basis supported by the record. *Allco Fin. Ltd. v. Klee*, 861 F.3d 82, 95 (2d Cir. 2017) (citation omitted). We therefore decline to address whether Mt. Hawley's arguments are precluded under Section 3420(d)(2), assuming—without deciding—that they are not.

Sutherland on Statutory Construction § 47.33, at 369 (6th rev. ed. 2000) ("Referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent."). But in contrast to this oft-applied rule, the series-qualifier canon provides that "'[w]hen there is a straightforward, parallel construction that involves all nouns or verbs in a series,' a modifier at the end of the list 'normally applies to the entire series.'" *Facebook, Inc. v. Duguid*, 592 U.S. 395, 402-403 (2021) (quoting A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 147 (2012) (alteration in original)). "When a comma is included," this Circuit generally applies the series-qualifier canon in lieu of the last antecedent rule. *Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, 712 F.3d 775, 781-82 (2d Cir. 2013).

Here, however, where there are nested disjunctive lists, both syntactic canons work in tandem. We look first to the last antecedent to the clause "in connection with," which is "omissions." Given the comma, we apply the series-qualifier canon and expand the limiting clause's reach to include the series "acts or omissions." Mt. Hawley argues for more – asking that we apply the series-qualifier canon *twice* to include the larger list of "premises" and "work." But we

16

decline to do so, instead adopting the reading that comports with the most natural construction of the contract, as confirmed by the agreement viewed as a whole.

Consider the Limitations Clause. In one bullet point, the Limitations Clause explains that the policy does not cover bodily injuries arising "out of any act, omission, or negligence" of an additional insured *other than the general supervision of work* performed for the additional insured(s) by [Vanquish]." A-834 (emphasis added). But two separate bullet points limit coverage when "all work on the project" performed "on behalf of the additional insureds" at the site has been completed and when Vanquish's work—"out of which the injury . . . arises"—has been "put to its intended use" by entities "other than another contractor or subcontractor engaged in performing operations for a principal as part of the same project." A-833. Put simply, the Limitations Clause places durational limits on injuries at the site and from Vanquish's work and then, *separately*, places restrictions on injuries arising out of Reidy's acts and omissions other than its supervision of Vanquish. Each bullet point in the Limitations Clause thus corresponds to a separate category in the Coverage Grant. This overall structure strongly suggests that the phrase "in connection with" does not modify the entire Coverage Grant, but only the nested disjunctive phrase, "acts

17

or omissions of the additional insured." *See Handelsman v. Sea Ins. Co.*, 85 N.Y.2d 96, 100–101 (1994) (determining a phrase did not modify other terms in a coverage grant in part to create consistency with an exclusion); *Utica Fire Ins. Co. of Oneida Cnty. v. Gozdziak*, 604 N.Y.S.2d 371, 371–72 (App. Div. 1993) (reading an exclusion to be consistent with a "parallel policy provision" that evinced an intent to define covered insureds and excluded individuals "in mutually exclusive fashion").

Finally, Mt. Hawley's proposed reading would "defeat[] the main object of the purchased coverage." *Lend Lease (U.S.) Constr. LMB Inc. v. Zurich Am. Ins. Co.*, 22 N.Y.S.3d 24, 31 (App. Div. 2015), *aff'd on other grounds by Lend Lease*, 28 N.Y.3d 675. Generally, the purpose behind additional insurance in the construction industry is to apportion the risks inherent in hiring a subcontractor. And the "liability risks" a general contractor faces by hiring a subcontractor include both suits for contributory negligence and "vicarious responsibility for [a] subcontractor's negligence." *Burlington Ins. Co. v. NYC Transit Auth.*, 29 N.Y.3d 313, 326 (2017) (citation omitted); *see Citizens Ins. Co. of Am. v. Am. Ins. Co.*, 130 N.Y.S.3d 289, 290 (App. Div. 2020).[8] These were precisely the risks that Vanquish

---

[8] *See also Hanover Ins. Co. v. Phila. Indem. Ins. Co.*, 73 N.Y.S.3d 549, 550 (App. Div. 2018); *3650 White Plains Corp. v. Mama G. Afr. Kitchen Inc.*, 167 N.Y.S.3d 94, 96 (App. Div. 2022).

and Reidy contracted to eliminate—and thus, the risks Vanquish anticipated when it purchased the Mt. Hawley policy. A-841 (requiring coverage from claims "arising out of or in any way connected with the operations performed hereunder by or on behalf of [Vanquish]"); *see also BP Air Conditioning Corp. v. One Beacon Ins. Grp.*, 8 N.Y.3d 708, 716 (2007) (discerning the reasonable expectations underlying an insurance policy by looking to the purchase order that requested such additional insurance coverage). Mt. Hawley's interpretation, by restricting coverage only to injuries arising out of Reidy's supervision, would fail to protect Reidy against "contingent liability for damage resulting from operations performed by its [sub]contractor" outside of Reidy's supervision. *Cnty. of Monroe v. Travelers Ins. Cos.*, 100 Misc.2d 417, 423 (N.Y. Sup. Ct. 1979). We decline to adopt an interpretation that would "virtually nullif[y] the coverage sought for anticipated risk." *Lend Lease*, 22 N.Y.S.3d at 31; *see Burlington Ins. Co.*, 29 N.Y.3d at 325–27 (rejecting an interpretation that was inconsistent with the purpose of additional insurance coverage); *Cnty. of Monroe*, 100 Misc.2d at 423 (same); *City of New York v. Phila. Indem. Ins. Co.*, 864 N.Y.S.2d 454, 456 (App. Div. 2008) (same).

In light of the text, structure, and intended risk allocation of the policy, we conclude, as did the district court, that the best reading of the Coverage Grant is

19

that it covers liability arising out of 1) Vanquish's premises, 2) Vanquish's work for Reidy, or 3) Reidy's acts or omissions in connection with its general supervision of Vanquish's work. And because the accident arose out of Vanquish's work, Reidy is an additional insured under the policy. We therefore affirm the district court's grant of summary judgment to Reidy on this issue.

## IV. Employers Liability Exclusion

Mt. Hawley next asserts that even if Reidy is an additional insured, the Employers Liability Exclusion unambiguously bars coverage. The Exclusion states that it does not cover the bodily injuries of "[a]n 'employee' of any insured arising out of and in the course of: [e]mployment by the insured[.]" A-771. In looking to the entire policy, we conclude that Mt. Hawley has not met its burden of proving that the Exclusion applies and is subject to "no other reasonable interpretation." *Lend Lease*, 28 N.Y.3d at 684 (citation omitted). Instead, we hold that the Exclusion is ambiguous and construe it against Mt. Hawley, the drafter.

According to Mt. Hawley, the phrase "[e]mployment by the insured" refers to the immediate antecedent, "any insured." Mt Hawley's policy defines an "insured" as "an insured person under the terms of the underlying insurance." A-754 (emphasis removed). Any insured therefore could encompass either Vanquish, as the named insured, or Reidy, as the additional insured. *See Bayport*

20

*Constr. Corp. v. BHS Ins. Agency*, 985 N.Y.S.2d 143, 145 (App. Div. 2014) (concluding that the plain meaning of "any insured" included additional insured and named insured); *Howard & Norman Baker, Ltd. v. Am. Safety Cas. Ins. Co.*, 904 N.Y.S.2d 770, 772 (App. Div. 2010) (same). Under Mt. Hawley's reading, the Exclusion applies because an employee of "any insured"—Vanquish—was injured in the course of employment for *that* insured. We agree with Mt. Hawley that this interpretation is reasonable, at least when the Exclusion is looked at by itself, shorn of its context. *See Hastings Dev., LLC v. Evanston Ins. Co.*, 701 F. App'x 40, 43–44 (2d Cir. 2017) (summary order) (interpreting an Exclusion in part based on the policy's broad definition of "employee").

But another interpretation is even more plausible, particularly in light of the "customs, practices, usages and terminology" of the business. *Parks*, 472 F.3d at 42. The Mt. Hawley policy contains a Separation of Insureds provision, which instructs that the policy applies "separately to each insured against whom claim is made or suit is brought." A-760. In construing similar contractual language, we have determined that, in light of the Separation of Insureds, "the insured" can be understood to refer to the entity seeking coverage. *See Emps.' Liab. Assurance Corp. v. Travelers Ins. Co.*, 411 F.2d 862, 865 (2d Cir. 1969); *In Endurance Am. Specialty*

21

*Ins. Co. v. Century Sur. Co.*, 630 F. App'x 6, 8 (2d Cir. 2015) (summary order); *Emps. Ins. Co. of Wasau v. Harleysville Preferred Ins. Co.*, 726 F. App'x 56, 62–63 (2d Cir. 2018) (summary order). So, too, have New York courts. *See, e.g.*, *Fulmont Mut. Ins. Co. ex rel. Hutchinson v. N.Y. Cent. Mut. Fire Ins. Co.*, 772 N.Y.S.2d 406, 408 (App. Div. 2004); *Greaves v. Pub. Serv. Mut. Ins. Co.*, 5 N.Y.2d 120, 123–125 (1959); *Lane v. Sec. Mut. Ins. Co.*, 96 N.Y.2d 1, 5 (2001). Here, employees of "any insured," Vanquish, were injured, but not in the scope of their employment for Reidy. Because Reidy is the insured seeking coverage, the Exclusion does not apply.

Mt. Hawley attempts to discredit this latter interpretation as rendering the term "any insured" a nullity. It is true that the Separation of Insureds provision may not be used to override the plain meaning of terms such as "any insured." *See Endurance*, 630 F. App'x at 8; *Howard & Norman Baker*, 904 N.Y.S.2d at 771–72; *Richner Dev., LLC v. Burlington Ins. Co.*, 916 N.Y.S.2d 211, 212–13 (App. Div. 2011). But the Separation of Insureds Clause here does no such thing. Rather, read in context of the Separation of Insureds provision, the Employers Liability Exclusion precludes coverage of injuries sustained by employees of *any* insured when it is their employer who is seeking coverage ("the insured"). And this construction— whereby no insured could seek compensation from Mt. Hawley for injuries to its

own employees—"makes excellent sense, since such risks would be expected to be covered by workmen's compensation insurance." *Emps.' Liab. Assurance*, 411 F.2d at 865.

In short, examining "the *entire* contract"—not just specific words in their immediate contexts—confirms that insofar as Mt. Hawley's argument is concerned, the Employers Liability Exclusion is, at best, ambiguous. *Kass*, 91 N.Y.2d at 566 (citation omitted) (emphasis added); *see Riverside S. Plan. Corp. v. CRP/Extell Riverside, L.P.*, 13 N.Y.3d 398, 404 (2009). While the definition of insureds and "common speech" may suggest that the Employers Liability Exclusion is sweeping, *Cetta*, 535 N.Y.S.2d at 807, the Separation of Insureds provision suggests otherwise, *see Emps.' Liab. Assurance*, 411 F.2d at 865. So, too, do other provisions in the policy. The "Automobile Liability Exclusion," for example, discusses claims "against *any* insured" regarding "the supervision, hiring, employment, training or monitoring of others by *that* insured . . . ." A-763 (emphases added). The Employers Liability Exclusion elsewhere exempts injuries sustained by family members of "*that* 'employee.'" A-771 (emphasis added). The fact that Mt. Hawley did not draft the Employers Liability Exclusion to exempt injuries sustained by an employee of any insured in the course of

employment for *that insured*—when it obviously knew how to do so—further undermines any attempt to distill the Exclusion to only one possible meaning. *See Essex Ins. Co. v. Grande Stone Quarry*, LLC, 918 N.Y.S.2d 238, 241 (App. Div. 2011) (concluding an Exclusion was ambiguous for similar reasons); *cf. Maroney v. N.Y. Cent. Mut. Fire Ins. Co.*, 5 N.Y.3d 467, 473 (2005).

Having concluded that the language in the Employers Liability Exclusion is ambiguous, we therefore turn to extrinsic evidence to ascertain the intent of the parties. *Parks*, 472 F.3d at 43. Mt. Hawley, as the insurer, carries the burden of proving that its interpretation is correct in light of such evidence. *Morgan Stanley*, 225 F.3d at 276. On appeal, as below, Mt. Hawley offers no extrinsic evidence supporting its interpretation. Rather, it rejects any possibility of ambiguity and merely restates how the Employer's Liability Exclusion should be read. Without such extrinsic evidence, we must construe the ambiguous language in favor of the insured, Reidy. *Parks*, 472 F.3d at 43; *Morgan Stanley*, 225 F.3d at 276. Thus, as a matter of law, the Employer's Liability Exclusion does not bar coverage, and the district court properly granted Reidy and Merchants' motion for summary

judgment and denied Mt. Hawley's motion on this issue.   *N.Y. Marine*, 599 F.3d

at 115.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

MENASHI, *Circuit Judge*, dissenting:

The contract in this case reads as follows: "This policy does not apply to bodily injury to an employee of any insured arising out of and in the course of employment by the insured." App'x 771 (cleaned up). An ordinary reader of this sentence would understand that "the insured" refers back to "any insured." So "the insured" denotes whichever of the insureds—Vanquish or Reidy—oversees the employee who suffered bodily injury. Because the injured employees here are employees of Vanquish, "the insured" refers to Vanquish.

That conclusion follows directly from the straightforward contractual language. But the majority follows a convoluted path away from applying the plain contractual text. First, the majority decides that the contract is "ambiguous" because "the insured" might *actually* mean "the insured seeking coverage." *Ante* at 20-22. Second, the majority faults Mt. Hawley for failing to produce "extrinsic evidence" that would resolve the purported ambiguity the majority has discovered. *Id.* at 24. Third, in the absence of such evidence, the majority "construes" the ostensibly "ambiguous language in favor of the insured." *Id.* at 24-25.

I would begin and end with the text of the contract. In my view, "no reasonable layman could have misunderstood the language used. Only a lawyer could find anything ambiguous about it; and the strained and involved attempts to make words mean what they plainly do not is proof that ambiguity is lacking." *Wilson v. State Farm Mut. Auto. Ins. Co.*, 128 N.W.2d 218, 222 (Iowa 1964) (Thompson, J., dissenting). Accordingly, I dissent.

# I

This case comes down to twenty-six words: "This policy does not apply to bodily injury to an employee of any insured arising out of and in the course of employment by the insured." App'x 771 (cleaned up). How should we read those words? The state courts of New York have told us: "Where the provisions of an insurance contract are clear and unambiguous, the courts should not strain to superimpose an unnatural or unreasonable construction." *Maurice Goldman & Sons, Inc. v. Hanover Ins. Co.*, 80 N.Y.2d 986, 987 (1992). As a result, "unambiguous provisions of an insurance contract must be given their plain and ordinary meaning." *Vigilant Ins. Co. v. Bear Stearns Cos.*, 10 N.Y.3d 170, 177 (2008) (quoting *White v. Cont'l Cas. Co.*, 9 N.Y.3d 264, 267 (2007)).

This provision is not ambiguous. Because "the insured" refers to the "any insured" identified earlier in the sentence, "the insured" denotes whichever of "any insured" employs the injured employee. In this case, the injured employees are employees of Vanquish, so Vanquish is "the insured."

If a contract said that "an employee of any company may receive a bonus in the course of employment by the company," no reasonable reader would conclude that an employee's bonus depends on working for one *specific* company. The bonus would be awarded in the course of employment by whichever company—"any company"—employs the relevant employee. If another contract said that "an employee of any government will be fired for misconduct arising in the course of his or her employment by the government," everyone again would understand that "the government" refers to whichever of "any government" supervises the employee.

2

The majority recognizes this commonsensical view under which "the Exclusion applies because an employee of 'any insured'—Vanquish—was injured in the course of employment for *that* insured." *Ante* at 21. The majority claims that this interpretation is merely a "reasonable" one. *Id.* But this is the natural and obvious meaning of the text. When the contractual language is as clear as it is here, the "case begins, and pretty much ends, with the text." *Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721, 1724 (2020); *see Vigilant Ins. Co.*, 10 N.Y.3d at 177.

## II

Yet the majority refuses to apply the plain and ordinary meaning of the text. It insists that there is "another interpretation" that is "even *more* plausible, particularly in light of the 'customs, practices, usages and terminology' of the business." *Ante* at 21 (emphasis added) (quoting *Parks Real Est. Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006)). The majority observes that "[t]he Mt. Hawley policy contains a Separation of Insureds provision, which instructs that the policy applies 'separately to each insured against whom claim is made or suit is brought.'" *Id.* at 21-22 (quoting App'x 760). And the majority argues that "in light of the Separation of Insureds, 'the insured' *can* be understood to refer to the entity seeking coverage." *Id.* at 22 (emphasis added). In this way, when "read in context of the Separation of Insureds provision, the Employers Liability Exclusion precludes coverage of injuries sustained by employees of *any* insured when it is their employer who is seeking coverage ('the insured')." *Id.* at 23.

The upshot of this interpretation is that if John Doe was injured while working for Company A, the policy precludes Company A from receiving coverage when Company A seeks coverage. In this

case, the employees worked for Vanquish but Reidy sought coverage. *See id.* at 23-24. "Because Reidy is *the insured seeking coverage*, the Exclusion does not apply." *Id.* at 22 (emphasis added). Given the possibility of this alternative understanding, the majority concludes that the twenty-six words are, "at best, ambiguous." *Id.* at 23.

But that is wrong. The tortured way in which the majority arrives at its alternative understanding violates a basic principle of contract interpretation. "We cannot disregard 'the plain meaning of the policy's language in order to find an ambiguity where none exists.'" *10 Ellicott Square Ct. Corp. v. Mountain Valley Indem. Co.*, 634 F.3d 112, 119 (2d Cir. 2011) (alteration omitted) (quoting *Empire Fire & Marine Ins. Co. v. Eveready Ins. Co.*, 851 N.Y.S.2d 647, 648 (2d Dep't 2008)). That is what the majority does: According to the majority, the twenty-six words might *appear* to have a plain meaning. But when you throw in the separation-of-insureds clause, the broader commercial practice, and the case law, the words *become* ambiguous.

That approach is backward. "The rules of interpretation are resorted to for the purpose of resolving ambiguity, not for the purpose of creating it." *In re Boggs-Rice Co.*, 66 F.2d 855, 858 (4th Cir. 1933). Such tools "may not be used to create but only to remove doubt." *Russell Motor Car Co. v. United States*, 261 U.S. 514, 519 (1923). Even assuming that it is proper for the majority to look beyond the unambiguous text, moreover, none of the three pieces of context that it identifies justify a departure from the plain language.

## A

First, the majority contends that when the contract includes a separation-of-insureds clause, the phrase "the insured" must refer to the entity seeking coverage. I agree that we consider a contractual provision in "context." *Ante* at 23. But it is not true that the separation-

4

of-insureds clause affects the meaning of "the insured" in the liability exclusion here. The separation-of-insureds clause directs that the policy be applied "separately to each insured against whom claim is made or suit is brought." App'x 760. That means that we read the contract "from the perspective of the particular insured seeking coverage." *Endurance Am. Specialty Ins. Co. v. Century Sur. Co.*, 630 F. App'x 6, 7 (2d Cir. 2015). If the contract referred only to "the insured," we would understand the reference to be to the particular insured seeking coverage. But we do not understand an insurance contract that way—even when it includes a separation-of-insureds clause—if the contract refers to "any insured":

> [W]here, for example, employee exclusions have altered the language "the insured" to language expressing a different intent, such as "any insured," courts have held that the insurance policy precludes coverage of injuries to any employee, whether employed by the insured seeking coverage or not, because to do otherwise would render the unambiguous language referring to any insured "a nullity."

*Id.* at 8 (quoting *Nautilus Ins. Co. v. Barfield Realty Corp.*, No. 11-CV-7425, 2012 WL 4889280, at *10 (S.D.N.Y. Oct. 16, 2012)). The contract in this case refers to "any insured." App'x 771. The separation-of-insureds clause does not require us to ignore the obvious fact that "the insured" later in the sentence refers to any one of the "any insured" described earlier in the sentence. To the contrary, we must accept that plain meaning rather than "strain to superimpose an unnatural or unreasonable construction." *Maurice Goldman & Sons*, 80 N.Y.2d at 987. "[C]ourts are to construe the terms of an insurance contract as they are used in common speech." *Parks*, 472 F.3d at 42.

The applicable case law requires us to adopt the interpretation that Mt. Hawley endorses rather than the one the majority contrives. According to that case law, we must avoid an interpretation that "would render the unambiguous language referring to *any insured* 'a nullity.'" *Endurance*, 630 F. App'x at 8 (emphasis added) (quoting *Nautilus*, 2012 WL 4889280, at *10). The interpretation of the majority does just that. When it concludes that "the insured" refers not to "any insured"—as the contract is written—but only to the particular insured seeking coverage, the majority writes the phrase "any insured" out of the contract. The exclusion might as well apply to "bodily injury to an employee of *the insured* arising out of and in the course of employment by the insured." But that is not what the contract says. When an interpretation would render the phrase "any insured" a nullity, "courts have held that the insurance policy precludes coverage of injuries to any employee, whether employed by the insured seeking coverage or not." *Id.* We should follow that precedent here.

The majority cannot deny that its interpretation nullifies the phrase "any insured." It acknowledges that "Mt. Hawley attempts to discredit this latter interpretation as rendering the term 'any insured' a nullity." *Ante* at 22. It responds to that argument by asserting that, when "read in context" of the separation-of-insureds clause, the liability exclusion "precludes coverage of injuries sustained by employees of *any* insured when it is their employer who is seeking coverage ('the insured')." *Id.* at 23. That is an admission that Mt. Hawley is right: Nothing about this interpretation would be any different if "any insured" were replaced with "the insured."

So the majority pivots to a policy argument. It says that its preferred "construction—whereby no insured could seek compensation from Mt. Hawley for injuries to its own employees—

'makes excellent sense, since such risks would be expected to be covered by workmen's compensation insurance.'" *Id.* (quoting *Employers' Liab. Assur. Corp. v. Travelers Ins. Co.*, 411 F.2d 862, 865 (2d Cir. 1969)).

Our job is not to pick the arrangement that we think would make the most sense for the parties. The parties have already negotiated and signed a contract based on what they believe would make the most sense for themselves. "In a contract action, the court's general objective should be to give effect to the intentions of the parties in entering into the agreements." *Metro. Life Ins. Co. v. RJR Nabisco, Inc.*, 906 F.2d 884, 889 (2d Cir. 1990). I would adhere to the contractual language as the best evidence of the intentions of the parties rather than impose whatever policy two judges think makes "excellent sense" based on their views of the insurance market. *Ante* at 23. "The best evidence of what parties to a written agreement intend is what they say in their writing." *Greenfield v. Philles Recs., Inc.*, 98 N.Y.2d 562, 569 (2002) (quoting *Slamow v. Del Col*, 79 N.Y.2d 1016, 1018 (1992)).

**B**

Second, the majority claims that its interpretation makes "excellent sense" given broader commercial practices. *Cf. ante* at 21 (arguing that the "interpretation is even more plausible, particularly in light of the 'customs, practices, usages and terminology' of the business") (quoting *Parks*, 472 F.3d at 42). The majority suggests that the twenty-six words might reflect its alternative understanding because that understanding corresponds to industry norms.

But that is wrong again. The industry includes policies that correspond to both readings of the contractual language. Some excess liability policies clearly *exclude* coverage for general contractors based

7

on an injury to a subcontractor's employee. *See, e.g., Bayport Constr. Corp. v. BHS Ins. Agency*, 117 A.D.3d 660, 661 (2d Dep't 2014) (describing a provision that excludes coverage for "Bodily injury to: (1) An 'employee' of any insured arising out of and in the course of: (a) Employment by any insured"); *Endurance*, 630 F. App'x at 7 (describing a provision that excludes coverage for "'Bodily injury' to: (1) An 'employee' of the named insured arising out of and in the course of: (a) Employment by the named insured" and that identifies the subcontractor as the named insured) (emphasis omitted). At the same time, other excess liability policies clearly *extend* coverage to the general contractor for injuries to a subcontractor's employee. *See, e.g., Emps. Ins. Co. of Wausau v. Harleysville Preferred Ins. Co.*, 726 F. App'x 56, 62 (2d Cir. 2018) (describing a provision that excludes coverage for "bodily injury to: An 'employee' of the 'insured' arising out of and in the course of: (1) Employment by the 'insured'").

Thus, the market for excess liability insurance includes policies that cover injuries to the employees of a subcontractor as well as policies that do not. So the commercial practice provides support for either of the parties' interpretations: Some policies would cover general contractors in Reidy's situation while others would not. Because the "customs, practices, usages and terminology" do not favor one interpretation over the other, the commercial practice provides no reason to depart from the plain contractual language. *Parks*, 472 F.3d at 42. There is no justification for holding that Mt. Hawley's interpretation would contradict the commercial expectations of the parties.

## C

Third, the majority suggests that case law supports its interpretation. But no precedent holds that "the insured" must refer

8

to the insured seeking coverage whenever a contract includes a separation-of-insureds clause. The applicable precedent says that a separation-of-insureds clause requires us to read the contract from the perspective of the insured seeking coverage. From that perspective, a reference to "the insured" will naturally refer to whichever insured is seeking coverage *unless* the parties "have altered the language 'the insured' to language expressing a different intent, such as 'any insured.'" *Endurance*, 630 F. App'x at 8. That is the language we have in this case, and there is certainly no precedent that requires "the insured" to refer only to the insured seeking coverage when the language of the exclusion expresses a different intent.

\* \* \*

While an ambiguous provision must be interpreted to favor the insured, a court "cannot disregard 'the plain meaning of the policy's language in order to find an ambiguity where none exists.'" *10 Ellicott Square*, 634 F.3d at 119 (alteration omitted) (quoting *Empire Fire*, 851 N.Y.S.2d at 648). "It may be conceded that if a policy of insurance is of doubtful tenor the courts should employ that interpretation which is the more exacting against the insurer who has prepared the contract. But if the contract is not of uncertain meaning, as has often been said, the courts may not make a new one under the guise of construction." *Rosenthal v. Am. Bonding Co.*, 207 N.Y. 162, 168-69 (1912).

Any reader of English knows what this sentence means: "This policy does not apply to bodily injury to an employee of any insured arising out of and in the course of employment by the insured." App'x 771 (cleaned up). I would give it effect. Because the majority instead fashions a contract to which the parties did not agree, I dissent.